**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **LAKESHIA CHANEY, Individually and** | § | |
| **as the Surviving Mother of J.T., and as** | § | |
| **the Administrator of the Estate of J.T.,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | **CIVIL ACTION NO. 5:21-cv-1082** |
| **v.** | § | |
| | § | |
| **EAST CENTRAL INDEPENDENT** | § | |
| **SCHOOL DISTRICT** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **and** | § | |
| | § | |
| **LOURDES DIAZ,** | § | |
| | § | |
| *Defendants*. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, Lakeshia Chaney, Plaintiff, individually and as the surviving mother of J.T. and as the administrator of the Estate of J.T., complaining of Defendants East Central Independent School District ("ECISD") and Lourdes Diaz ("Diaz"), in her official and individual capacity, and for cause would show the Honorable Court as follows:

## I.        NATURE OF THE ACTION

1. J.T. was 7 years old when he attended Salado Elementary School as a first-grade student within the East Central Independent School District.

2. J.T. was the only black student in his class. J.T. was an individual with a disability after having been diagnosed with Attention Deficit Hyper-Activity Disorder ("ADHD"). J.T.

PLAINTIFF'S ORIGINAL COMPLAINT                                                          Page 1

was relentlessly bullied for being black and for having ADHD by students within his own classroom.

3. J.T.'s teacher, Lourdes Diaz, was on notice of the persistent bullying, which included racial slurs, name-calling, and physical assault. Diaz did nothing to prevent or otherwise address the bullying of J.T. As a result, the bullying persisted.

4. On or about December 21, 2019, the last day of the semester before Christmas break, J.T. committed suicide in his home after expressing how depressed and exhausted he was of the constant bullying.

## II.   PARTIES

5. Plaintiff, Lakeshia Chaney, is a resident of San Antonio, Texas. Plaintiff is the surviving mother of J.T., Decedent, and brings this wrongful death action on his behalf as a surviving parent. *See* Tex. Civ. Prac. & Rem. Code § 71.021.  Plaintiff also brings this survival action on behalf of the Estate of J.T.  Plaintiff is an heir of Decedent's Estate.  No administration of the Estate of J.T. has been initiated, as it is believed that no administration is necessary.

6. Defendant, East Central Independent School District, hereinafter "ECISD," is a school district organized and existing under the laws of the State of Texas and at all times is required to follow the laws contemplated by the United States Constitution and all other statutory laws and rules promulgated thereunder. Employees, personnel and/or agents within ECISD are responsible for the care, management and control of all public school business, including the training of teachers at the schools and supervision of students. ECISD may be served through their Superintendent, Roland Toscano, at 6634 New Sulphur Springs Road, San Antonio, TX 78263.

7.  Defendant, Lourdes Diaz, hereinafter "Diaz," was at all times relevant herein a public-school teacher employed by ECISD. Diaz may be served at 6215 Sunset Haven St., San Antonio, TX 78249, or wherever she may be found.

## III.   JURISDICTION AND VENUE

8.  Jurisdiction exists in this Honorable Court pursuant to 28 U.S.C. §§ 1331 and 1343 as this action is brought pursuant to the laws and rules of the United States. Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to adjudicate pendent state law claims.

9.  Venue is proper in this Court as Defendants' constitutional violations and intentional torts and otherwise violative conduct occurred within the Western District of Texas, San Antonio Division.

## IV.   ADMINISTRATIVE EXHAUSTION

10. Plaintiff has alleged, among other things, that J.T. was a student with a disability, whether it be pursuant to Section 504 of the Rehabilitation Act of 1973, the Americans With Disabilities Act or the Individuals With Disabilities Education Act, 20 U.S.C. § 1401 et seq. ("IDEA"). As such, save for the fact that he is deceased, J.T. would otherwise be required to satisfy the administrative exhaustion requirements of IDEA.

11. However, the Courts have recognized an exception to the exhaustion requirement. The exception applies when there is relief that could be obtained through this administrative process, known as the *futility exception*. It is now well settled that a student who is deceased

cannot receive any remedy that a hearing officer could provide, and as such, satisfies this futility exception. Accordingly, J.T. is not required to go through administrative exhaustion in this case.

## V.     FACTUAL ALLEGATIONS

### A.  J.T. BECAME A VICTIM OF TARGETTED RACIAL HARASSMENT AND BULLYING BY HIS CLASSMATES THAT WENT UNADDRESSED BY ECISD

12. J.T. was a first-grade student at Salado Elementary for the fall semester of the 2019-2020 academic school year at ECISD.

13. Plaintiff enrolled J.T. in a bilingual program at Salado because J.T. expressed interest in learning Spanish and actively worked to communicate in this new language.

14. J.T. was also diagnosed with ADHD, a learning disability that ECISD was on notice of since J.T.'s enrollment with ECISD.

15. J.T.'s schoolteacher for the fall semester at Salado was Defendant, Lourdes Diaz.

16. J.T. was the only black student in this first grade classroom taught by Diaz. All other students in the classroom were either white or hispanic.

17. On multiple occasions, J.T. was harassed and bullied by classmates due to the color of his skin and because of his ADHD. The harassment and bullying consisted of both verbal insults and physical assaults on J.T. over the course of several months during that fall semester.

18. Several of J.T.'s classmates would publicly call J.T. names and racial slurs, such as "nigger," "blackie," and "snaggletooth," among other names.

19. The bullying and harassment against J.T. was done both inside and outside of the classroom.

20. J.T. informed Diaz of the harassment and bullying that was ongoing. Diaz ignored J.T.'s repeated complaints and cries for help and dismissed the bullying allegations that were being made by J.T., despite the frequency in which J.T. would report these behaviors to Diaz.

21. J.T.'s family began to notice drastic changes in J.T.'s mood and behavior. J.T. was previously known for his positivity, fun spirit and loving nature. As the bullying and harassment progressed, J.T.'s family began to notice that he appeared depressed, withdrawn and scared to go to school. J.T. further began experiencing anxiety and nervousness – feelings that up to this point were never an issue with J.T.

22. After complaining to Diaz of the constant bullying and harassment, J.T. was placed by Diaz on one side of the classroom while all other students remained on the other side of the classroom.

23. Diaz had effectively segregated J.T., the lone black student in the classroom, to one side of the classroom and restricted his ability to effectively participate in classroom activities and education.

24. The bullying and harassment did not end there. In fact, the bullying and harassment continued to worsen as students now joked that J.T. was segregated by himself in the classroom.

25. None of the students who were bullying and harassing J.T. were ever punished or otherwise disciplined for their actions towards J.T.

26. On information and belief, Diaz never escalated the bullying and harassment complaints to her superiors and/or supervisors within ECISD.

27. J.T. again expressed his sadness to Diaz about his segregation in the classroom and the bullying and harassment that never ceased. Again, Diaz dismissed his complaints and cries for help.

28. Diaz never informed Plaintiff or J.T.'s family of any sort of behavioral or disciplinary issues regarding J.T.

29. Plaintiff requested a parent-teacher conference with Diaz to discuss J.T.'s situation in the classroom. On or about November 7, 2019, Plaintiff and Diaz met at their scheduled conference where Plaintiff saw first J.T. segregated in the classroom.

30. Plaintiff asked Diaz why J.T. was segregated in the classroom and Diaz replied that J.T. was having issues with other students in the classroom. Plaintiff requested that in the future Diaz should immediately call Plaintiff if any issue arises regarding her son, whether it be bullying or other issues in the classroom. Diaz agreed to do so in the future and Plaintiff again gave Diaz the phone numbers for herself and her husband.

31. Plaintiff also requested that Diaz address the bullying and harassment, as well as reintegrate J.T. with his classmates as it was having a negative impact on J.T. Diaz agreed to address the bullying and harassment, as well as J.T.'s segregation.

32. Diaz also informed Plaintiff in this meeting that she herself had a son with ADHD, and as a result, knew how to manage students with ADHD.

33. Despite Diaz's assurances of addressing the bullying and harassment, she never did so. The bullying and harassment persisted, along with J.T.'s segregation in the classroom.

34. On at least one occasion, J.T. was physically assaulted by his classmates. In the fall semester of the 2019-2020 school year, J.T. was physically assaulted on a school bus as he was headed home from school. The perpetrators of the assault tore J.T.'s shoes as they

called him names and continued to harass and bully him. J.T. notified the school bus driver, as well as Plaintiff, who reached out to the administration for answers.

35. On the last day of the semester just before Christmas break, J.T. came home from school and told Plaintiff that he was tired, couldn't stand the bullying anymore and upset that nobody at school was listening to him or taking his concerns seriously.

36. Plaintiff immediately began calling the school to ask about bullying and segregation in the classroom, but she received no response.

37. J.T. knew that he could not continue this cycle of bullying once the new semester at Salado Elementary resumed.

38. Diaz, school administrators and ECISD as a whole failed J.T. by ignoring his repeated pleas for help and in failing to protect him from the constant bullying and harassment he endured.

39. J.T. committed suicide later that night on December 21, 2019.

40. On December 27, 2019, Plaintiff met with Diaz and the Principal of Salado Elementary. Diaz refused to answer or otherwise address any of the questions Plaintiff brought up regarding the bullying and harassment that J.T. was subjected to.

**B.  ECISD'S BULLYING AND HARASSMENT POLICIES**

41. ECISD outlines its bullying and harassment policies to all employees and/or agents that become employed through ECISD. These policies can be found in the "East Central ISD Employee Handbook for Personnel."

42. Diaz was on notice of ECISD's policies surrounding bullying and harassment.

43. Despite being on notice of ECISD's policies surrounding bullying and harassment, as well as being on notice of repeated bullying incidents due to J.T.'s race, Diaz did nothing to prevent J.T. from continued harm. In fact, Diaz's decision to segregate the lone black

student in her classroom had the effect of causing further harm and bullying to be committed against J.T.

44. Bullying is defined by the Texas Education Code § 37.0832 as:

    (A) "means a single significant act or a pattern of acts by one or more students directed at another student that exploits an imbalance of power and involves engaging in written or verbal expression, expression through electronic means, or physical conduct that satisfies the applicability requirements provided by Subsection (a-1), and that:

        (i)  has the effect or will have the effect of physically harming a student, damaging a student's property, or placing a student in reasonable fear of harm to the student's person or of damage to the student's property.

        (ii)  is sufficiently severe, persistent, or pervasive enough that the action or threat creates an intimidating, threatening, or abusive educational environment for a student.

        (iii)  materially and substantially disrupts the educational process or the orderly operation of a classroom or school.

        (iv)  infringes on the rights of the victim at school. And

    (B)  includes cyberbullying.

45. The ECISD policy states, in pertinent part, that "All employees are required to report student complaints of bullying, including cyberbullying, to the campus administrator or immediate supervisor."

46. ECISD policy further provides that "The educator shall not exclude a student from participation in a program, deny benefits to a student, or grant an advantage to a student on

the basis of race, color, gender, disability, national origin, religion, family status, or sexual orientation.

47. On information and belief, ECISD had a "Threat Assessment Team" on campus of Salado Elementary at all times relevant herein. At least one purpose of this team was to "Provide guidance to students and school employees on recognizing harmful, threatening, or violent behavior that may pose a threat to the community, school, or individual."

48. On information and belief, Diaz never reached out to the Threat Assessment Team after being notified of the bullying and harassment that J.T. was subjected to.

49. Further, Diaz never reported any of J.T.'s complaints about bullying and harassment to the Plaintiff, her campus administrator or to her immediate supervisor.

## C. OTHER INSTANCES OF BULLYING AND HARASSMENT WITHIN ECISD HAVE BEEN UNADDRESSED

50. ECISD has had a pattern and practice of failing to address bullying and harassment within its schools.

51. Numerous complaints of bullying and harassment have been lodged by students and parents of students within ECISD. Many of these complaints, including written complaints, have alleged bullying based on disabilities and bullying based on race.

52. Despite the numerous complaints received, the ECISD administration failed to take any substantive actions to address the bullying and harassment within its district, and the appropriate reporting procedures that would keep students safe.

53. ECISD further failed to train its employees and/or agents on their responsibility for reporting bullying and harassment.

54. ECISD's failure to address the bullying and harassment and adjust their policies accordingly amounts to ECISD's deliberate indifference to the safety and rights of J.T. and other students within the district.

55. Policymaking authority generally rests with the school district's board of trustees. However, in some circumstances, notice to a school principal may suffice, as school principals are normally entrusted with the responsibility and authority associated with an "appropriate person."

56. In the present case, the policymakers of ECISD were aware of the intense bullying and harassment problem within the school district but chose not to address it.

57. Further, the policymakers of ECISD were aware of the discriminatory and unjustifiably different treatment between black and white students in their school district.

## VI.    CAUSES OF ACTION

### *Count I – Claims Pursuant to the Fourteenth Amendment*

58. Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

59. The facts outlined above demonstrate violations of J.T.'s civil rights pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

60. The acts and/or omissions of employees and agents at ECISD evidence a failure of the ECISD School Board to provide adequate training and supervision to staff, thus violating the rights of J.T. pursuant to the Due Process Clause of the Fourteenth Amendment for which the school district is liable.

61. ECISD discriminated against J.T. in singling him out as the only black student in his classroom and subjecting him to cruel treatment at a time when J.T. was being relentlessly harassed on account of his race and disability.

62. ECISD singularly discriminated against J.T. as a class-of-one in failing to keep him safe and against violating his rights under the Equal Protection Clause of the Fourteenth Amendment.

63. As a result, ECISD violated the Equal Protection Clause of the Fourteenth Amendment for which the school district is likewise liable under 42 U.S.C. § 1983.

### *Count II – Claims pursuant to 42 U.S.C. § 1983*

64. Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

65. Plaintiff would show that J.T.'s death was a direct result of the acts and/or omissions attributable to Defendant Diaz which were clearly unreasonable. That is, Diaz, without justification and the need to do so, singled J.T. out for discriminatory treatment by segregating him to one side of the classroom despite being on notice of the relentless bullying that J.T. was subjected to based on his race and disability.

66. Diaz's actions were clearly unreasonable in that she knew or should have known that segregating J.T., the lone black student in the classroom, while he was being bullied on account of his race and disability would have a harmful impact on J.T.'s ability not only to focus on school, but to also live a healthy life.

67. The acts and/or omissions outlined in this Complaint were not objectively reasonable or justified, nor were they necessary under the circumstances.

68. Diaz embarked on a willful, malicious, reckless, and outrageous course of conduct that was intended to cause and, in fact, caused J.T. to suffer extreme and severe mental and emotional distress, agony and anxiety.

69. Plaintiff would further show that Diaz and ECISD were deliberately indifferent to J.T.'s rights and pleas for help. Rather than acknowledge his repeated pleas concerning the bullying and harassment, Diaz and ECISD ignored the obvious consequences that would come from the relentless bullying campaign.

70. The bullying was so severe, pervasive, and objectively offensive that it could be said to deprive the J.T. of access to educational benefits or opportunities provided by the school and ECISD.

### Count III – 42 U.S.C. § 1983
### Unconstitutional Custom, Policy or Practice

71. Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

72. The acts and/or omissions of Defendants, which resulted in the death of J.T., were done pursuant to one or more interrelated *de facto* as well as explicit policies, practices, and/or customs of the Defendant ECISD.

73. On and for some time prior to December 21, 2019 (and continuing to the present date) ECISD deprived J.T. of the rights and liberties secured to him by the Fourteenth Amendment to the United States Constitution, in that said Defendant and their supervising, and managerial employees, agents, and representatives, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, knowingly maintained, enforced and applied an official policy recognized by the ECISD.

74. Diaz acted pursuant to an expressly adopted official policy or a longstanding practice or custom of the ECISD.

PLAINTIFF'S ORIGINAL COMPLAINT                                                    Page 12

75. Defendant ECISD, including the School Board and supervisors maintained, inter alia, the following unconstitutional customs, practices, and policies:

    a.  Discriminating against students on account of race.

    b.  Discriminating against students on account of disability.

    c.  Providing inadequate training regarding race.

    d.  Providing inadequate training regarding disability.

    e.  Providing inadequate training regarding what to do when confronted with bullying situations in the classroom.

    f.  Providing inadequate racial sensitivity training.

    g.  Employing and retaining as teaching personnel those who Defendant ECISD, at all times material herein, knew or reasonably should have known had dangerous propensities for ignoring student/parent complaints, abusing their authority, and for mistreating students in the classroom.

    h.  Inadequately supervising, training, controlling, assigning, and disciplining ECISD personnel who ECISD each knew, or in the exercise of reasonable care, should have known had the aforementioned propensities and character traits.

    i.  Employing and retaining personnel who have been known to be abusive and/or irresponsible.

    j.  Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining, and controlling the intentional misconduct by those who are ECISD personnel.

k.   Failing to adequately discipline personnel for the above-referenced categories of misconduct and discipline that is so slight that is tantamount to encourage misconduct.

l.   Having a *de facto* policy of ignoring student complaints of bullying.

m.   Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by ECISD were affirmatively linked to, and were a significantly influential force behind the death of J.T.

### Count IV – 42 U.S.C. § 1983
### Failure to Train

76. Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

77. ECISD is liable for all damages suffered by Plaintiff pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) and 42 U.S.C. § 1983 based on an official policy or custom of the ECISD of which the Policymakers all had actual or constructive knowledge that was a moving force behind the constitutional violations alleged herein.

78. The conduct set forth supra evinces a custom of allowing bullying to occur on campus without affirmative steps to address/prevent such bullying, a lack of policies and training instructing teachers on the appropriate manner in which to handle individuals who have been subjected to bullying and building a safe environment in the classroom.

79. With respect to the claims made the basis of this lawsuit, the ECISD failed to adequately train, supervise or discipline its employees regarding bullying and race discrimination in the classroom. The failure to train, supervise or discipline its employees in a relevant respect reflects a deliberate indifference on ECISD to the rights of the school district's students and is actionable under 42 U.S.C. § 1983.

80. ECISD developed and maintained a policy of deficient training of its teachers in the appropriate actions to take when confronted with a bullying situation in the classroom. ECISD's training is designed and implemented to act in this regard.

81. For instance, the following conduct, policies, and customs, *inter alia*, by ECISD violated J.T.'s constitutional rights:

    a. The inadequacy of ECISD's policies, training, supervision, or discipline relating to discrimination on account of race.

    b. The inadequacy of ECISD's policies, training, supervision, or discipline relating to discrimination on account of disability.

    c. Lack of training regarding effective communication with students who are experiencing bullying.

    d. Failing to maintain appropriate procedures for reporting, supervising, investigating, reviewing, disciplining, and controlling the intentional misconduct by those who are ECISD personnel.

82. ECISD's failure to properly train, supervise and discipline its teachers regarding the conduct, policies, and customs outlined above was the proximate cause of the violation of J.T.'s constitutional rights.

### *Count V – 42 U.S.C. § 1983*
### *Failure to Supervise and/or Discipline*

83. Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

84. On Plaintiff's claim against the ECISD for failing to supervise and/or discipline its teachers for prior violations and the resulting lack of supervision:

    a. ECISD failed to adequately supervise and/or discipline its employees in handling usual and recurring situations with which they deal.

b.  ECISD was deliberately indifferent to the need to supervise and/or discipline its teachers and/or employees adequately.

c.  The failure to adequately supervise and/or discipline its employees proximately caused the deprivation of J.T.'s constitutional rights. And

d.  ECISD failed to adequately supervise and/or discipline Diaz for ignoring J.T.'s pleas for help when he was being bullied on account of his race and disability for no justifiable reason, resulting in Plaintiff's damages.

85. Despite having knowledge of the violations of the policies and other best police practices as described above, ECISD failed and/or refused to adequately discipline Diaz. ECISD is well aware of the behavior of Diaz regarding this incident but has failed to take any action. ECISD's failure to adequately supervise and/or discipline its employees was therefore the moving force behind Plaintiff's damages.

### Count VI – Claims related to the Americans with Disabilities Act

86. Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

87. The facts as outlined above evidence a violation of the Americans with Disabilities Act, 42 U.S.C. § 12131, et seq. ("ADA").

88. J.T. was a qualified individual with a disability as defined in 42 U.S.C. § 12131(2) with his disabilities affecting major life activities, including his ability in attending public school and learning.

89. The ECISD is a public entity as defined in 42 U.S.C. § 12131(1) and receives federal financial assistance and is thus covered by the ADA mandate.

90. The ECISD provides a facility whose operation constitutes a program and service for ADA purposes.

91. J.T. was a victim of discrimination based on race and disability.

92. ECISD refused to reasonably accommodate J.T.'s disability and modify their services in violation of Title II of the ADA by not maintaining a safe environment and non-hostile educational environment for J.T.

93. The acts and//or omissions of ECISD undermined and interfered with J.T.'s rights for which ECISD is liable.

94. The acts and/or omissions of ECISD violated J.T.'s rights under the ADA by not keeping him as safe as his non-disabled peers.

95. These acts and/or omissions were the proximate cause and moving force behind J.T.'s death.

### Count VII – Claims related to Title VI
### 42 U.S.C. § 2000d

96. Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

97. Title VI provides that, "No person in the United States shall, on the ground of race, color, or national origin be excluded from participation in, be denied in the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance."

98. ECISD is a recipient of federal financial assistance, thus subject to the provisions of Title VI. ECISD has a pattern of engaging in racial discrimination, specifically with respect to student bullying issues and discipline, the issues directly involved in this lawsuit.

99. The ongoing discrimination in the ECISD was a direct and producing cause of the actions against J.T. perpetrated by his peers and the actions of Defendant Diaz in segregating him to one side of the classroom. As a result of the discriminatory intent of ECISD employees, Plaintiff is entitled to compensatory damages.

100.     Plaintiff's damages were a direct result of Defendant Diaz's acts and/or omissions when she was repeatedly confronted with the issue that J.T. was being bullied and harassed in the classroom on account of his race and disability.

101.     Rather than address the bullying and harassment, Diaz further perpetuated the racial animus against J.T. by segregating him to one side of the classroom for several weeks or months. ECISD ratified Diaz's course of conduct.

102.     J.T., as a black student with ADHD at ECISD was a member of a protected class and suffered racial discrimination at the hands of Diaz and ECISD that led to Plaintiff's damages described in this Complaint.

### *Count VIII – Claims Related to the Rehabilitation Act of 1973*

103.     Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

104.     The ECISD receives federal funds and thus follows the requisites of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

105.     Regulations pertaining to Section 504 require that each state that receives disbursements, including the state's political subdivisions such as ECISD, must ensure that all students with disabilities are given appropriate and necessary accommodations, pursuant to federal law and rules.

106.     To the extent that a policy or practice hinders honest consideration of a disabled student's unique and individualized needs and fails to accommodate that student's disability and keep the student safe, it violates Section 504.

107.     ECISD failed to keep J.T. safe by allowing him to be subjected to a hostile educational environment, unlike that which non-disabled students experienced.

The acts and omissions outlined above contributed to violating J.T.'s rights pursuant to Section 504, and the federal rules and regulations promulgated pursuant thereto.

108.  Further, the failures outlined above by ECISD were a gross deviation from their professional standard of care.

109.  The acts and omissions of ECISD violated the regulations under Section 504.

### Count IX – Negligence and Gross Negligence

110.  Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

111.  Defendants, individually and/or collectively, owed J.T. a legal duty to protect him from the harm and injuries he suffered, which ultimately resulted in his death. Defendants had a duty to exercise the degree of care that a reasonable person would use to avoid harm and provide care to others under circumstances similar to those herein. Plaintiff's injuries were directly, factually, and proximately caused by Defendants' negligent, careless, and reckless disregard of said duty.

112.  As a direct and proximate result of the Defendants', individual and/or collective, negligence, J.T. experienced extreme suffering, mental anguish and death which Plaintiff is entitled to recover from in excess of the minimum jurisdictional limits of this Court.

113.  Plaintiff would further show that the acts and omissions of Defendants, individually and/or collectively, were committed with complete and reckless disregard for, and with willful, wanton, and actual conscious indifference to the rights, safety, and welfare of J.T. and the general public.

114.    The nature of Defendants' acts and omissions were of such a nature as to constitute gross negligence and malice. Specifically, Defendants undertook a continuous course of action in the form of conscious decisions, with subjective knowledge and awareness of the risks and hazards presented by each decision as discussed above and incorporated herein, to expose J.T. to life threatening hazards when he was bullied on account of his race and disability.

115.    When viewed objectively from the standpoint of Defendants at the time of their occurrence, said acts and omissions involved an extreme degree of risk and danger, considering the probability and the magnitude of the potential harm to J.T.

116.    Defendants committed various acts and omissions constituting gross negligence, as outlined above. Such gross negligence was a proximate cause of the occurrence and Plaintiff's injuries and damages. Therefore, Plaintiff is entitled to punitive and/or exemplary damages.

### Count X – Wrongful Death

117.    Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

118.    Plaintiff bring this wrongful death action pursuant to Tex. Civ. Prac. & Rem. Code § 71.002. J.T. was a beloved son, brother, student, and friend at the time of his death. During his short time in this life, he brought incalculable joy to Plaintiff's life as well as to many others. He was the son of Plaintiff. Plaintiff has experienced the one loss that is every family member's greatest fear: burying her beloved son.

119.    Plaintiff has suffered, and will continue to suffer, damage to the child/parent relationship, including the loss of love, affection, solace, comfort, companionship,

society, assistance, and emotional support from her son as a proximate result of Defendants' conduct, acts and omissions, and negligence outlined in this Complaint.

120.     As a proximate cause of Defendants' conduct, acts and omissions, and negligence, Plaintiff has suffered severe mental depression and anguish, grief, and sorrow as a result of J.T.'s death, and in all reasonable probability will continue to suffer indefinitely into the future.

121.     Plaintiff has also suffered pecuniary loss and loss of inheritance due to the death of J.T. that Defendants' proximately caused.

### Count XI – Survival Action

122.     Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

123.     Plaintiff brings this survival action in her capacity as the legal heir of Decedent pursuant to Tex. Civ. Prac. & Rem. Code § 71.021. Defendants' negligent acts were a proximate cause of tremendous conscious pain, suffering, terror, mental anguish to J.T. preceding his eventual death. The Estate of J.T. is entitled to recover damages for:

    a.  J.T.'s conscious physical pain and suffering suffered by prior to his death;

    b.  His conscious mental anguish suffered prior to his death; and

    c.  Funeral and burial expenses for J.T.

### VII.   DAMAGES

124.     Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

125.     **Actual Damages.** Defendants' acts and/or omissions were a proximate and/or producing cause of the death of J.T. and the following damages:

**A. Estate of J.T. (Survival Claim – Tex. Civ. Prac. & Rem. Code § 71.021).**

1.     Conscious pain and mental anguish suffered by J.T. prior to his death;
2.     Funeral and burial expenses; and
3.     Exemplary damages.

**B. Lakeshia Chaney (as wrongful death beneficiary of J.T. – Tex. Civ. Prac. & Rem. Code § 71.004).**

1.     Mental Anguish – the emotional pain, torment, and suffering experienced by Plaintiff because of the death of her son, J.T. – that Plaintiff sustained in the past and that she will, in reasonable probability, sustain in the future;
2.     Loss of Companionship and Society – the loss of the positive benefits flowing from the love, comfort, companionship, and society that Plaintiff would have received from J.T. had he lived – that Plaintiff sustained in the past and that she will, in reasonable probability, sustain in the future;
3.     Pecuniary Loss – the loss of the care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value that Plaintiff would have received from J.T. had he lived – that Plaintiff sustained in the past and that she will, in reasonable probability, sustain in the future.

126.     **Punitive/Exemplary Damages.** Defendants' acts and/or omissions, as outlined above, were grossly negligent, in that, when viewed objectively from the standpoint of each of the Defendants, individually and/or collectively, at the time of its respective act and/or omission, involved an extreme degree of risk, considering the probability and magnitude of the potential harm, and of which each of the Defendants, individually and/or collectively, had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, and welfare of others, including J.T. As such, the Estate of J.T. is entitled to recover punitive and exemplary damages.

127.    Prejudgment and post judgment interest.

128.    Costs of Court.

## VIII.   JURY TRIAL

129.    Plaintiff demands a jury trial and would show that the appropriate fee has been paid

contemporaneously with the filing of Plaintiff's Original Complaint.

## IX.    PRESERVING EVIDENCE

130.    Plaintiff requests and demands that Defendants preserve and maintain all evidence

pertaining to any claim or defense related to the incident made the basis of this

lawsuit or the damages resulting therefrom, including statements, photographs,

videotapes, audiotapes, surveillance or security tapes or information, business or

medical records, incident reports, report cards, periodic reports, telephone call slips

or records, estimates, measurements, correspondence, facsimiles, email, voice mail,

text messages, and any electronic image or information related to the referenced

incident or damages. Failure to maintain such items will constitute "spoliation" of

the evidence.

## X.   PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays that Defendants be cited to appear and answer herein and that upon final trial and other hearing of this cause, Plaintiff recover damages from Defendants for all wrongful death damages, survival damages, general damages, punitive damages, and special damages in accordance with the evidence, including economic damages, non-economic damages and exemplary damages as the jury deems her deserving; that Plaintiff recover costs of court herein expended; that Plaintiff recover interest to which she is justly entitled under the law, both prejudgment and post judgment; and for such other further relief, both general and special, both in law and in equity, to which Plaintiff may be justly entitled.

Respectfully Submitted,

/s/ Blerim Elmazi
BLERIM ELMAZI, ESQ.
State Bar No. 24118375
THE LAW OFFICES OF BLERIM ELMAZI
800 N. Fielder Rd., Suite 100 C
Arlington, TX 76012
(817) 438-0123
Blerim@ElmaziLaw.com

/s/ Bredric Berry
BREDRIC BERRY, ESQ.
State Bar No. 24117165
RUBY BERRY LAW GROUP, PLLC
2617 Bissonnet Street, Suite 200 #456
Houston, TX 77005
(713) 324-8886
BBerry@rberrylaw.net
(PRO HAC VICE FORTHCOMING)

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2021, I electronically filed the foregoing document with the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.

*/s/ Blerim Elmazi*
Blerim Elmazi