IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LAKESHIA CHANEY, INDIVIDUALLY AND AS THE SURVIVING MOTHER OF J.T., AND AS THE ADMINISTRATOR OF THE ESTATE OF J.T., | § § § § § | SA-21-CV-01082-FB |
| *Plaintiff,* | § § | |
| vs. | § § | |
| EAST CENTRAL INDEPENDENT SCHOOL DISTRICT, LOURDES DIAZ, | § § § | |
| *Defendants.* | § § | |

**REPORT AND RECOMMENDATION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Defendants' 12(b)(1) and 12(b)(6) Motion to Dismiss Plaintiffs' Original Complaint [#13] and Defendants' Opposed Motion to Stay Discovery and Case Pending Ruling on Defendants' 12(b)(1) and 12(b)(6) Motion to Dismiss Plaintiffs' Original Complaint [#18]. All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#12]. The undersigned has authority to enter this recommendation on Defendants' motion to dismiss pursuant to 28 U.S.C. § 636(b)(1)(B) and this order on Defendants' motion to stay pursuant to 28 U.S.C. § 636(b)(1)(A).

For the reasons set forth below, it is recommended that Defendants' motion to dismiss be **granted in part and denied in part**. All claims against Lourdes Diaz should be dismissed. And all claims against East Central Independent School District should be dismissed except for Plaintiff's claims arising under the Americans with Disabilities Act, Section 504 of the

1

Rehabilitation Act, and Title VI of the Civil Rights Act of 1964. In light of this recommendation, the undersigned will also **grant in part** the motion to stay and stay all discovery regarding the claims asserted against Lourdes Diaz while this report and recommendation is pending before the District Court. Finally, the undersigned will also give Plaintiff the opportunity to file a more definite statement clarifying her status vis-à-vis the Estate of J.T. for purposes of establishing her legal capacity to proceed on its behalf and to replead her claim under the Equal Protection Clause against ECISD pursuant to 42 U.S.C. § 1983.

## I.  Background

This case arises out of the tragic suicide of seven-year-old J.T. (Compl. [#1], at ¶¶ 1–4.) At the time of his death, J.T. was a first grader at Salado Elementary School within the East Central Independent School District ("ECISD"). (*Id.*) J.T. was the only Black student in his class and had been diagnosed with Attention Deficit Hyper-Activity Disorder ("ADHD"). (*Id.*) J.T.'s mother, Lakeshia Chaney, filed this wrongful-death action against J.T's teacher, Lourdes Diaz, and ECISD, alleging that J.T. committed suicide because he was the victim of ongoing bullying on account of his race and ADHD diagnosis. (*Id.*) Chaney alleges that Diaz was on notice of the bullying, which included racial slurs, name-calling, and physical assault, yet did nothing to prevent or otherwise address the behavior. (*Id.*)

Chaney brings this action on behalf of J.T. as a surviving parent and on behalf of J.T.'s estate pursuant to Texas's wrongful death and survivorship statutes and pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), Title VI of the Civil Rights Act of 1964 ("Title VI"), and Section 504 of the Rehabilitation Act of 1973 ("Section 504"). (*Id.* at ¶¶ 5, 58–123.) Chaney's Original Complaint asserts that Defendants violated J.T.'s right to due process and equal protection in violation of Section 1983 (Counts I through V), discriminated against

him and refused to accommodate his disability in violation of the ADA and Section 504 (Counts VI and VIII), subjected him to racial discrimination in violation of Title VI (Count VII), and are liable for negligence and gross negligence under Texas common law and for wrongful death under Texas's wrongful death and survivorship statutes (Counts IX through XI).  (*Id.*)

Defendants have filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, raising numerous arguments regarding the Court's jurisdiction and the sufficiency of Chaney's pleadings and invoking various immunities from suit.  In addition, Defendants have filed a motion to stay this case, requesting a stay of all discovery pending resolution of their motion to dismiss.  Chaney has filed responses to both motions, and the motions are ripe for the Court's review.

## II.  Analysis of Motion to Dismiss

The Court should grant in part and deny in part Defendants' motion to dismiss.  For the reasons that follow, Plaintiff's claims against ECISD under the ADA, Section 504, and Title VI should survive.  But all other claims against the ECISD, and all claims against Diaz, should be dismissed.  The dismissal of Chaney's Section 1983 claim against ECISD under the Equal Protection Clause, however, should be a dismissal without prejudice with the opportunity to file a more definite statement containing additional allegations supporting this claim.

## A.    Legal Standard

Defendants move for dismissal under both Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  Motions filed under Rule 12(b)(1) allow a party to challenge the subject-matter jurisdiction of the district court to hear a case.  *See* Fed. R. Civ. P. 12(b)(1); *Ramming v. United States*, 281 F.3d 158, 161.  When a court's subject matter jurisdiction is factually attacked, the court may consider matters outside of the pleadings. *Oaxaca v. Roscoe*,

3

641 F.2d 386, 391 (5th Cir. 1981).  Where a motion to dismiss for lack of jurisdiction is limited to a facial attack on the pleadings, it is subject to the same standard as a motion brought under Rule 12(b)(6).  *See Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008); *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992).  The burden of establishing federal jurisdiction rests on the party seeking the federal forum.  *Ramming*, 668 F.3d at 161.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Although a complaint "does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  The allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.

Generally, in deciding a motion to dismiss, a court may not look beyond the four corners of the Plaintiff's pleadings without converting the motion to a motion for summary judgment. *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 261 (5th Cir. 1999); Fed. R. Civ. P. 12(d). The Court may, however, consider documents attached to the complaint and those that are central to the claims at issue and incorporated into the complaint by reference.  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)

(internal quotation omitted).   However, a Court need not credit conclusory allegations or allegations that merely restate the legal elements of a claim.  *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678).  In short, a claim should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief.  *See Twombly*, 550 U.S. at 570.

**B.     Legal Capacity of Chaney**

Defendants argue that Chaney lacks legal capacity to file this suit on behalf of J.T.'s estate because she has not established that she is the estate's personal representative, as required under Texas law.  As previously noted, Chaney's Complaint invokes Texas's wrongful death and survivor statutes, and she brings this action as J.T.'s surviving mother on behalf of both J.T. and herself individually and as J.T.'s heir on behalf of his estate.  (Compl. [#1], at ¶ 5.)  By this lawsuit, Chaney seeks damages for her mental, emotional, and pecuniary losses stemming from the death of her son, as well as for the suffering of J.T. prior to his death and to cover his funerary and burial expenses.  (*Id.* at ¶ 125.)

Rule 17 of the Federal Rules of Civil Procedure governs the capacity to sue and be sued. An action must be prosecuted in the name of the real party in interest under federal law.  Fed. R. Civ. P. 17(a)(1).  Rule 17 directs courts to apply the law of the state where the court is located in determining the legal capacity of a party.  *See id.* at 17(b)(3).  Accordingly, Texas law governs the question of who has capacity to assert the state and federal claims in this action based on the alleged wrongful death of J.T.

Under Texas law, standing and capacity are two distinct concepts, both of which are required in order to bring a lawsuit.  *Lorentz v. Dunn*, 171 S.W.3d 854, 856 (Tex. 2005).  But

unlike standing, a party's lack of capacity is an affirmative defense and does not deprive a court of subject matter jurisdiction.  *See Sixth RMA Partners v. Sibley*, 111 S.W.3d 46, 56 (Tex. 2003).  *See also Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 853 n.7 (Tex. 2005) (indicating that if trial court concludes that capacity is lacking, court should give plaintiff reasonable time to cure defect).

Defendants' capacity argument challenges only Chaney's capacity to sue on behalf of J.T.'s estate, not on her own behalf as J.T's surviving mother.  Under Texas law, the "estate" of a decedent is not a legal entity and may not sue or be sued, and the personal representative of the estate is ordinarily the only person entitled to sue for the recovery of property belonging to the estate.  *Price v. Estate of Anderson*, 522 S.W.2d 690, 691 (Tex. 1975); *Frazier v. Wynn*, 472 S.W.2d 750, 752 (Tex. 1971).  Defendants contend that Chaney lacks capacity to sue on behalf of J.T.'s estate because she has not asserted that she has been qualified by a Texas court to serve as the personal representative of J.T.'s estate pursuant to the requirements set forth in the Texas Estates Code.  *See* Tex. Est. Code § 305.001, *et seq.*

Yet the Texas Supreme Court has explained that heirs at law can maintain a suit on behalf of an estate during the four-year period allowed by law for instituting administration proceedings without qualifying as personal representatives, so long as they "allege and prove that there is no administration pending and none necessary."  *Frazier*, 472 S.W.2d at 752.  Chaney has alleged both.  (*See* Compl. [#1], at ¶ 5 (alleging "[n]o administration of the Estate of J.T. has been initiated" and "it is believed that no administration is necessary").  Yet in the caption of this case and the opening paragraph of the Complaint, Chaney states she is proceeding as both "the surviving mother" of J.T. and "the administrator" of his estate.  (*Id.* at ¶ 1.)

The undersigned agrees with Defendants that these allegations are internally inconsistent, as they suggest an estate administration and do not make clear that Chaney is proceeding solely as J.T.'s heir at law.  However, the undersigned declines to dismiss this case and all of the asserted claims by Chaney on grounds of lack of capacity.  This relief requested by Defendant is not warranted at this early stage of the proceedings, when Chaney has yet been given an opportunity to amend her pleadings.  Nor is the undersigned persuaded by Defendants' waiver argument—that Chaney has waived her right to establish her legal capacity to proceed with this entire suit because she incorrectly interpreted Defendants' challenge to her capacity as an issue of standing in her response to their motion.

Rather, the undersigned will simply direct Chaney to file a more definite statement addressing the identified inconsistencies in her Complaint and clarifying whether she is proceeding in this suit vis-à-vis J.T.'s estate as an heir at law (as there is no estate administration pending and none is necessary) or as a representative of J.T.'s estate requiring further factual allegations regarding her legal status as personal representative.

## C.      State Law Claims

Chaney's Complaint asserts Texas tort claims for negligence, gross negligence, and wrongful death, alleging that Defendants are collectively liable for their failure to protect J.T. from harm.  (Compl. [#1], at ¶ 111.)  Defendants move to dismiss Chaney's state-law claims, arguing that ECISD enjoys governmental immunity and Diaz enjoys professional immunity from liability for these claims.  The undersigned agrees that these claims should be dismissed.

### i.      <u>Governmental Immunity of ECISD</u>

In Texas, a governmental unit is immune from tort liability unless the Legislature has waived immunity.  *Dallas Cty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d

339, 341 (Tex. 1998); *Harris County v. Dillard*, 883 S.W.2d 166, 168 (Tex. 1994).  This immunity from suit is jurisdictional in nature.  *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999).   A school district is a governmental unit for purposes of state governmental immunity.  *See LeLeaux v. Hamshire-Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex. 1992); *see also Barr v. Bernhard*, 562 S.W.2d 844, 846 (Tex. 1978) ("The law is well settled in this state that an independent school district is an agency of the state and, while exercising governmental functions, is not answerable for its negligence in a suit sounding in tort.").

The Texas Tort Claims Act addresses the waiver of governmental immunity for the State of Texas and its governmental units.  *See* Tex. Civ. Prac. & Rem. Code §§ 101.001, *et seq.*  As it pertains to this case, the Act provides:

> A governmental unit in the state is liable for:
>
> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
>> (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
>>
>> (B) the employee would be personally liable to the claimant according to Texas law . . . .

*Id.* at § 101.021.  Pursuant to the express terms of this limited waiver of immunity, ECISD is not liable for a personal injury proximately caused by a negligent employee unless the injury "arises from the operation or use of a motor-driven vehicle or motor-driven equipment."  *Id.*  No such allegations are at issue here.

Additionally, the Texas Tort Claims Act specifically exempts intentional tort claims such as assault and intentional infliction of emotional distress from the Act's limited waiver of sovereign immunity.  *Id.* at §101.057.  Accordingly, insofar as Chaney's Complaint could be

construed to allege some intentional conduct by an ECISD employee resulting in the death of J.T., ECISD is immune from liability based on these actions.   In summary, this Court lacks subject matter jurisdiction over Chaney's tort claims against ECISD due to its governmental immunity from liability for these claims.

The Tort Claims Act also has the effect of extending immunity to government employees. Subsection 101.106(f) of the Act states:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

*Id.* at § 101.106(f).   Thus, for subsection 101.106(f) to apply to a suit against a government employee in his individual capacity, two conditions must be met: (1) the conduct at issue must have been within the general scope of her employment; and (2) the suit could have been brought "under this chapter" against the governmental unit.   *Id.*   The Texas Supreme Court has construed the second condition to cover any claim "in tort and not under another statute that independently waives immunity."   *Franka v. Velasquez*, 332 S.W.3d 367, 381 (Tex. 2011).   In light of this construction, a negligence claim "could have been brought" against a governmental unit under the Tort Claims Act even though the Act does not waive the unit's immunity for such claims. *See id.* at 379–80.

Defendants invoke Section 101.106(f) in their motion to dismiss and argue for the immunity of Diaz in addition to ECISD.   The undersigned agrees with Defendants that the conduct at issue—Diaz's alleged failure to protect J.T. from harassment and bullying at school—

falls within the scope of Diaz's employment as a teacher at ECISD.  Accordingly, the tort claims against Diaz in her individual capacity must also be dismissed.

While the Texas Tort Claims Act allows plaintiffs to amend their pleadings by dismissing the individual defendants and naming their governmental entity employer within 30 days after a motion to dismiss is filed, Tex. Civ. Prac. & Rem. Code § 101.106(f), such an amendment would be futile here.  Chaney has already sued ECISD in tort, and as explained above, ECISD is immune from suit.

### ii.     Professional Immunity of Diaz

Defendants argue that Diaz is also immune from suit in tort under the doctrine of professional immunity.   The Texas Education Code confers immunity on "professional employees of a school district."  Tex. Educ. Code § 22.0511.  The statute provides:

> A professional employee of a school district is not personally liable for any act that is incident to or within the scope of the duties of the employee's position of employment and that involves the exercise of judgment or discretion on the part of the employee, except in circumstances in which a professional employee uses excessive force in the discipline of students or negligence resulting in bodily injury to students.

*Id.*  "Professional employee" is defined as "a superintendent, principal, teacher, including a substitute teacher, supervisor, social worker, school counselor, nurse, and teacher's aide employed by a school district."  *Id.* at § 22.051(a)(1).  As a teacher at ECISD, Diaz enjoys this statutory professional immunity.

Defendants argue that Chaney's Complaint does not allege any conduct that could fall under the exception to professional immunity articulated in the statute, as Chaney does not accuse Diaz of engaging in excessive force or negligent discipline of J.T.  Although the statute does not include the term "negligent discipline" but rather refers generally to "negligence

resulting in bodily injury," the Texas Supreme Court construed identical language in a predecessor statute as abrogating immunity only when an employee uses excessive force in discipline or engages in negligent discipline. *Hopkins v. Spring Indep. Sch. Dist.*, 736 S.W.2d 617, 619 (Tex. 1987). In doing so, the Texas Supreme Court defined "negligent discipline" as punishment that involves no force but rather requires some action on the part of the student, such as running laps, that cause the student to suffer bodily injury. *Id.*

Accordingly, Section 22.051 is applied by Texas courts as creating only "a very narrow exception to the school employee's immunity for the use of excessive force or for negligent acts of discipline which cause injury to a child." *Johnson v. Calhoun Cty. Indep. Sch. Dist.*, 943 S.W.2d 496, 498–99 (Tex. App.—Corpus Christi-Edinburg 1997, writ denied) ("Although there is a duty on principals and teachers to keep order in the schools, it is only when they are disciplining a student that they lose their immunity from suit.") To allege a claim based on negligent discipline, a plaintiff must assert (1) the school district employee was negligent; (2) the circumstances involved student discipline; (3) the punishment required action on the part of the student; and (4) the student suffered bodily injury as a result of the punishment. *Fike v. Miller*, 437 S.W.3d 640, 649 (Tex. App.—Tyler 2014, no pet.). There must be a nexus between the school district employee's negligent conduct, the punishment, and the student's ultimate injury. *See Diggs v. Bales*, 667 S.W.2d 916, 918 (Tex. App.—Dallas 1984, writ refused n.r.e.).

Chaney has not alleged the requisite elements of a negligent discipline claim. She does not allege that Diaz disciplined or punished J.T.; she has alleged that Diaz failed to discipline other students for their mistreatment of J.T. (Compl. [#1], at ¶ 25.) The only factual allegation that could ostensibly be construed as discipline in Chaney's Complaint is her allegation that, after J.T. complained about bullying and mistreatment, Diaz segregated him from his classmates

by placing him on one side of the classroom while the other students remained on the opposite side.  (*Id.* at ¶ 22.)  Yet this conduct did not require any physical action on the part of J.T. that could have caused him to suffer the bodily injury at issue in this case.  *Cf. Diggs*, 667 S.W.2d at 918 (providing the example of punishing a child by ordering him to run laps around a field).  *See also Moore v. Miller*, No. 10-11-00127-CV, 2012 WL 309512, at *4 (Tex. App.—Waco, Feb. 1, 2012, no pet.) (finding genuine issue of fact on application of immunity waiver where teacher dislodged student from her chair, throwing her to the ground, because she was dissatisfied with her work, resulting in severe injuries to the student).

Nor has Chaney responded to Defendants' invocation of professional immunity on behalf of Diaz in her response to their motion to dismiss or addressed Section 22.0511 at all.  It is Chaney's burden to establish this Court's jurisdiction over all claims asserted in this lawsuit.  *See Ramming*, 668 F.3d at 161.  She has failed to do so.  Chaney's tort claims do not allege any excessive force or negligent discipline and therefore do not fall under the limited waiver of immunity established by Section 22.0511.

**D.     ADA and Rehabilitation Act Claims**

Defendants also seek dismissal of the ADA and Rehabilitation Act claims asserted in the Complaint.  The Court should dismiss these claims against Diaz but allow them to proceed against ECISD.

Chaney alleges that J.T. was a qualified individual with a disability for purposes of the ADA and Rehabilitation Act and that Defendants failed to accommodate his disability by not maintaining a safe and non-hostile educational environment and discriminated against him on account of his disability by not keeping him as safe as his non-disabled peers.  (Compl. [#1], at ¶¶ 88, 91–95, 107.)  In order to state a claim for peer-to-peer disability harassment under the

ADA or Section 504, Chaney must plead facts demonstrating: (1) J.T. was an individual with a disability, (2) he was harassed based on his disability, (3) the harassment was sufficiently severe or pervasive that it altered the condition of his education and created an abusive educational environment, (4) defendant knew about the harassment, and (5) defendant was deliberately indifferent to the harassment. *Estate of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 996 (5th Cir. 2014). Defendants argue that these claims must be dismissed because Chaney does not allege that J.T. was harassed based on his disability, only his race. The undersigned disagrees with this characterization of the pleadings.

Chaney's Complaint repeatedly alleges harassment based on both J.T.'s race and J.T.'s disability—his diagnosis with ADHD. (*See* Compl. [#1], at ¶ 2 ("J.T. was relentlessly bullied for being black and for having ADHD by students within his own classroom."); ¶ 17 ("On multiple occasions, J.T. was harassed and bullied by classmates due to the color of his skin and because of his ADHD."); ¶ 91 ("J.T. was a victim of discrimination based on race and disability.").) The Complaint also specifically alleges that Diaz's decision to segregate J.T. on one side of the classroom was based on her personal experience of having a son with ADHD. (*See id.* at ¶ 32 ("Diaz also informed Plaintiff in this meeting that she herself had a son with ADHD, and as a result, knew how to manage students with ADHD.").

Insofar as Defendants are arguing that these allegations are too vague to satisfy Rule 8's pleading requirements, the undersigned also disagrees. Chaney's ADA and Rehabilitation Act claims are not subject to a heightened pleading standard that requires specifying the who, what, when, where of the alleged disability-based harassment. It is sufficient at this stage of the proceedings that Chaney has alleged that students in J.T.'s classroom bullied him due to his ADHD diagnosis.

13

Defendants do not challenge the sufficiency of Chaney's pleadings as to her ADA and Rehabilitation Act claims on any other basis or as to any other required element of the claims. Because Chaney has alleged that J.T. was the victim of disability-based harassment, that Defendants were aware of the harassment, that it was pervasive enough to alter the educational environment, and that they were deliberately indifferent to its effect on J.T., she has stated a plausible claim under the ADA and Rehabilitation Act.

However, these claims may only proceed against ECISD. Section 504 of the Rehabilitation Act does not provide for suits against individuals because private suits are only authorized against the entities that receive federal financial assistance. *Flynn v. Distinctive Home Car, Inc.*, 812 F.3d 422, 430 (5th Cir. 2016) ("[A] plaintiff may not sue her supervisor individually for employment discrimination under Section 504 of the Rehabilitation Act . . . because the individual supervisor *does not herself receive federal financial assistance*.") (emphasis in original). Although the Fifth Circuit has not directly addressed whether an individual may be held liable as an "employer" under Title I of the ADA, other circuit courts and district courts within this circuit have found that individuals are not subject to liability. *Collister v. Am. Arb. Ass'n*, No. 1:20-CV-01180-DAE-SH, 2022 WL 229361, at *4 (W.D. Tex. Jan. 25, 2022) (collecting cases). *See also Roman-Oliveras v. Puerto Rico Elec. Power Auth.*, 655 F.3d 43, 51–52 (1st Cir. 2011) (affirming dismissal of ADA claims due to "virtually universal view" that Title I of the ADA does not impose individual liability); *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999) (holding that ADA does not permit actions against individual defendants for conduct protected by statute); *Shabazz v. Tex. Youth Comm'n*, 300 F. Supp. 2d 467, 473 (N.D. Tex. 2003) (holding that "Plaintiff is precluded from bringing an action under the ADA, just as he is under Title VII, against a person acting for an employer"). Chaney may not

sue Diaz for violations of the Rehabilitation Act and ADA, and these claims should be dismissed.

**E.    Title VI Claims**

The Court should also dismiss Chaney's Title VI claim against Diaz but allow the claim to proceed against ECISD.  Title VI provides that, "[n]o person in the United States shall, on the ground of race, color, or national origin be excluded from participation in, be denied in the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.  Chaney alleges that Defendants violated Title VI by engaging in a pattern of racial discrimination against Black students and segregating J.T. to one side of the classroom rather than addressing the race-based harassment in the classroom. (Compl. [#1], at ¶¶ 96–102.)

The Fifth Circuit has recognized a racial discrimination claim under Title VI premised on a racially hostile environment arising from student-on-student harassment.  *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 408 (5th Cir. 2015).  To prevail on such a claim, a plaintiff must allege that (1) the harassment was so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to educational opportunities or benefits provided by the school; (2) that the school district had actual knowledge of the harassment; (3) that the school district had control over the harasser and the environment in which the harassment occurs; and (4) that the school district was deliberately indifferent.  *Id.* at 408–09.  For the harassment to be "severe, pervasive, and objectively offensive," "the harassment must be more than the sort of teasing and bullying that generally takes place in schools."  *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 167 (5th Cir. 2011).  That being said, the Fifth Circuit has recognized that "there is no question" that repeatedly being referred to by racial epithets and

shamed and humiliated on the basis of one's race "is harassment far beyond normal schoolyard teasing and bullying." *Fennell*, 804 F.3d at 409.

Defendants have not moved for dismissal of Chaney's Title VI claim against ECISD. Perhaps this is an oversight, as their motion seeks dismissal of all other claims.  They do, however, argue that, as with the ADA and Section 504, Chaney may not pursue her Title VI claim against Diaz individually.  The Fifth Circuit has held that "only public and private entities can be held liable under Title VI," and therefore the Court should also dismiss the Title VI claims against Diaz.  *See Price ex rel. Price v. La. Dep't of Educ.,* 329 Fed. App'x 559, 561 (5th Cir. 2009).  The Court should, however, allow Chaney's Title VI claim against ECISD to proceed.

## F.     Section 1983 Claims

Chaney's Section 1983 claims allege violations of J.T.'s rights to due process and equal protection provided by the Fourteenth Amendment.  (Compl. [#1], at ¶¶ 59–63.)  Defendants raise several arguments in favor of dismissal of these claims: (1) the failure to allege the requisite state action to impose liability on ECISD or Diaz under the Due Process Clause; (2) the qualified immunity of Diaz; and (3) the failure to allege a policy or custom to impose *Monell* liability on ECISD.  For the reasons that follow, the Court should dismiss Chaney's Section 1983 claims against both Defendants, but Chaney should have the opportunity to replead her equal protection claim against ECISD.

### i.      <u>Chaney fails to plead a plausible due process claim based on J.T.'s act of private violence.</u>

In order to state a valid claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that the alleged deprivation of constitutional rights was committed by a person or entity acting under the color of state law.  *Doe v. Dallas Independent School District*, 153 F.3d 211, 215 (5th Cir.

16

1998).  Defendants argue that Chaney has failed to allege the requisite state action to impose liability on ECISD or Diaz under the Due Process Clause, as J.T.'s death was caused by his own act of private violence, not state action.  In making this argument, Defendants cite to the Supreme Court's decision in *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), and its progeny, addressing the state action required to give rise to a substantive due process violation.  The undersigned agrees with Defendants that Chaney cannot state a claim under the Due Process Clause based on J.T.'s suicide because she has not alleged the requisite state action.

"[B]ecause the Fourteenth Amendment protects liberty and property interests only against invasion by a state, a section 1983 plaintiff, alleging the deprivation of Due Process under the Fourteenth Amendment, must also show that state action caused his injury."  *Priester v. Lowndes County*, 354 F.3d 414, 421 (5th Cir. 2004).  The Supreme Court in *DeShaney* explained that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."  489 U.S. at 197.

*DeShaney* involved a case against a county social services department for the failure to remove a child from his father's custody after receiving complaints that the child was the victim of abuse.  *Id.* at 191.  The child was not removed and was permanently injured.  *Id.*  The mother of the boy sued the department, claiming that its failure to act had deprived the boy of his liberty in violation of the Due Process Clause of the Fourteenth Amendment.  *Id.*  The Supreme Court affirmed the lower court's grant of summary judgment to the department, construing the claim as invoking the substantive rather than procedural component of the Fourteenth Amendment and concluding that the failure to protect the child from abuse did not violate the Due Process Clause.  *Id.* at 197.  In doing so, the Court emphasized that the Court's precedents also establish that the

Due Process Clause does not confer any "affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Id.* at 196. "If the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them." *Id.* at 196–97.

The Supreme Court rejected the argument that the State acquired an affirmative duty to protect the boy from his abusive father because of a "special relationship" between the parties. *Id.* at 197–98. The Supreme Court reasoned that such a duty arises only when the State takes a person into its custody and holds him there against his will, and thus has a corresponding duty for the individual's safety and wellbeing. *Id.* at 199–200 ("In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty— which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.").

Defendants argue that no such special relationship has been alleged or exists here. Chaney did not respond to these arguments in her response to Defendants' motion or address *DeShaney* in her briefing to the Court. The undersigned agrees that the special relationship exception is not at issue in this case. The Fifth Circuit has found a special relationship to exist in a school setting only where certain factors are present that make the school setting more akin to a custodial relationship in an institutionalized setting. *See, e.g.*, *Walton v. Alexander*, 20 F.3d 1350, 1355 (5th Cir. 1994) (finding special relationship in context of state-run deaf boarding school with 24-hour custody of student). In the normal context of non-residential public

education, the Fifth Circuit has repeatedly declined to find that a special relationship exists between school districts and their students based solely on compulsory attendance laws, especially where the injury at issue occurred after school hours, as here.  *See Doe v. Hillsboro Indep. Sch. Dist.*, 113 F.3d 1412, 1415 (5th Cir. 1997) (finding no special relationship requiring protection of student from sexual assault by custodian after school hours); *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 529 (5th Cir. 1994) (finding no special relationship or accompanying duty to protect a student injured by gun violence at a school-sponsored dance held after school hours).  In doing so, the Fifth Circuit has reasoned that "[t]he restrictions imposed by attendance laws upon students and their parents are not analogous to the restraints of prisons and mental institutions" because "[t]he custody is intermittent," "the student returns home each day," and "[p]arents remain the primary source for the basic needs of their children."  *Doe*, 113 F.3d at 1415.

The Fifth Circuit even refused to recognize a special relationship where a public school repeatedly released a nine-year-old student into the custody of an unauthorized third party, who sexually molested and raped the child on numerous occasions.  *Doe ex rel. Magee v. Covington County Sch. Dist. ex rel. Keys*, 675 F.3d 849, 853 (5th Cir. 2012) (en banc).  The Fifth Circuit was not persuaded that the young age of the child or the affirmative actions taken by the school in releasing the child to the unauthorized adult were sufficient to trigger the exception.  *Id.* at 859–63.  Under these precedents, there is no basis here for finding that Defendants had a duty to protect J.T. from his own act of private violence, which occurred after school hours and outside of school property in the privacy of his own home.

There is one other exception to the general principle stated in *DeShaney*—when the State exposes a person to danger of its own creation.  *Piotrowski v. City of Houston*, 237 F.3d 567, 583

(5th Cir. 2001).  The so-called "state-created-danger exception," though embraced by other Circuit Courts of Appeals, has however never been adopted by the Fifth Circuit.  *Id.*; *Joiner v. United States*, 955 F.3d 399, 407 (5th Cir. 2020) (We have "repeatedly declined to recognize the state-created danger doctrine in this circuit.").  Even assuming *arguendo* that the Fifth Circuit recognized this exception, there is no support for its application on the facts at issue here.

Courts have been understandably reluctant to extend the state-created-danger theory to the context of suicide.  As one district court reasoned,

> As a general principle, people cannot violate their own constitutional rights, and where a person makes a free and affirmative choice to end his life, the responsibility for his actions remains with him. That a state official somehow contributed to a person's decision to commit suicide does not transform the victim into the state's agent of his own destruction.

*Jahn v. Farnsworth*, 33 F. Supp. 3d 866, 877 (E.D. Mich. 2014), *aff'd*, 617 Fed. App'x 453 (6th Cir. 2015).  Courts analyzing the state-created-danger theory in the suicide context have required an affirmative act on the part of the state actor that significantly exacerbated the danger to the suicide victim, as opposed to mere inaction or failure to intervene.  *See Wilson v. Gregory*, 3 F.4th 844, 858 (6th Cir. 2021) ("failure to act is not an affirmative act under the state-created danger theory") (internal citation and quotation omitted); *Doe v. Ros*a, 795 F.3d 429, 439 (4th Cir. 2015) (to establish § 1983 liability based on a state-created danger theory, "a plaintiff must show that the state actor created or increased the risk of private danger, and did so directly through affirmative acts, not merely through inaction or omission."); *Hasenfus v. LaJeuness*, 175 F.3d 68, 73 (1st Cir. 1999) ("Where a state official acts so as to create or even markedly increase a risk, due process constraints may exist, even if inaction alone would raise no constitutional concern.").  The Fifth Circuit, in discussing the theoretical application of the state-created-danger theory, has explained that liability under this exception only "exists only if the state actor is

aware of an immediate danger facing a known victim." *Lester v. City of College Station*, 103 Fed. App'x 814, 815 (5th Cir. 2004).  Additionally, there must be evidence that defendants (1) used their authority to create a dangerous environment for the plaintiff and (2) acted with deliberate indifference to the plight of the plaintiff.  *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 537–38 (5th Cir. 2003).

There is only one Circuit Court of Appeals that has applied the state-created-danger exception to find a duty to protect someone from suicide, *see Armijo v. Wagon Mound Pub. Schs.*, 159 F.3d 1253, 1256 (10th Cir. 1998), and this case is considered an outlier.  *See Hasenfus*, 175 F.3d at 74 ("If sound, the Tenth Circuit decision is at the outer limit . . . .").  In *Armijo*, school officials sent a special education student who had previously talked of suicide home without notifying his parents of his removal from school due to suspension.  159 F.3d at 1256.  For the *Armijo* court, the critical facts were that Armijo "was a member of a limited and specifically definable group—special education students who have expressed threats of suicide"—and the school officials affirmatively placed him at greater risk of suicide when they suspended him, caused him to become distraught and threaten violence, and then took him to his home and left him alone there where they knew he had access to firearms.  *Id.* at 1264.

Chaney has not alleged that Defendants were aware that J.T. was a suicide risk, only that they were aware of J.T. being the target of race-based and disability-based harassment and bullying.  Nor has Chaney alleged that Defendants engaged in any affirmative act that is linked directly to the suicide that would have created a dangerous situation where J.T. was at greater risk of self-inflicted harm.

Finally, insofar as Chaney is attempting to allege that Defendants created a danger to J.T. of continued bullying, as an injury distinct from his suicide, this theory of liability also fails as a

matter of law.  The Fifth Circuit rejected a similar argument in *Estate of Lance*, another case concerning bullying and harassment that led to suicide.  743 F.3d at 1002–03.  In *Lance*, the court concluded that school officials did not create "an opportunity that would not otherwise have existed" for bullying to occur or take any action that made the child more likely to be bullied.  *Id.* at 1002.  To the contrary, the school district had "attempted to alleviate tensions between [the child] and the other students by, for instance, arranging his seating in class away from a problematic student."  *Id.*  Although Chaney alleges here that Diaz's attempt to separate J.T. from his harassers ultimately exacerbated his feelings of isolation and led to further bullying, Chaney does not allege that Defendants affirmatively placed J.T. in a position of danger such that bullying was more likely to occur than before.  The state-created-danger theory does not apply to this case, and the Court should dismiss Chaney's substantive due process claim against both Defendants.

> ### ii.    Diaz has qualified immunity on Chaney's Section 1983 claims, and her equal protection claim fails as a matter of law.

As to Chaney's Section 1983 claims against Diaz individually, Defendants assert the defense of qualified immunity.  Qualified immunity shields federal and state officials from individual liability for civil damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.  *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Lower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

In the context of a qualified immunity analysis, the facts are construed in the light most favorable to the party asserting the injury.  *Austin v. Johnson*, 328 F.3d 204, 207 (5th Cir. 2003)

(citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  A right is clearly established for purposes of the second step of the qualified-immunity analysis if it would be clear to a reasonable official, at the time of the challenged conduct, that his or her conduct violated the statutory or constitutional right at issue.  *Saucier*, 533 U.S. at 206.  Stated another way, a right is clearly established if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The Supreme Court has repeatedly admonished lower courts not to define clearly established law at a high level of generality.  *See, e.g.*, *al-Kidd*, 563 U.S. at 742.  Rather, the inquiry must be undertaken in light of the specific factual context of the case.  *Mullenix v. Luna*, 577 U.S. 7, 12 (2015).  The dispositive question is "whether the violative nature of particular conduct is clearly established."  *al-Kidd*, 563 U.S. at 742.  However, there need not be a specific precedent on point that presents identical or even factually analogous circumstances for a defendant to be on notice that their conduct violates the Constitution.  *Taylor v. Riojas*, --U.S.--, 141 S. Ct. 52, 53–54 (2020) (per curiam) (citing *Hope v. Peltzer*, 536 U.S. 730, 741 (2002) ("a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question")).

At the motion-to-dismiss stage, as here, the Fifth Circuit merely requires plaintiffs invoking Section 1983 to plead "specific facts that, if proved, would overcome the individual defendant's immunity defense."  *Jackson v. City of Beaumont Police Dep't*, 958 F.2d 616, 620 (5th Cir. 1992) (internal quotation and citation omitted).  Accordingly, to rebut the qualified immunity of Diaz, Chaney's Complaint must contain allegations that, when viewed in the light most favorable to her and to J.T., if ultimately proved, would plausibly show that Diaz's conduct violated a clearly established constitutional right of J.T.  *Saucier*, 533 U.S. at 206.

The undersigned has already concluded that Chaney's due process claim fails as a matter of law for failure to plead state action.  *See supra* at Section II.F.i.  This leaves only the equal protection claim as a possible constitutional violation for which Diaz could be liable.  Chaney's Complaint does not plead a plausible violation of the Equal Protection Clause.

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  *City of Cleburne, Tex. v. Cleburne Living Center. Inc.*, 473 U.S. 432, 439 (1985).  Essentially, the Equal Protection Clause directs that state and local governments shall treat all similarly situated persons alike.  *Id.*  To state a claim of race or disability discrimination under the Equal Protection Clause and Section 1983, Chaney must allege that J.T. "received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent."  *Priester*, 354 F.3d at 424 (internal quotation and citation omitted).  A discriminatory purpose "implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for *the purpose* of causing its adverse effect on an identifiable group."  *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001) (emphasis in original).

Chaney alleges that Diaz violated J.T.'s right to equal protection by singling him out as the only Black student in his classroom and subjecting him to cruel treatment while he was being harassed on account of his race and disability.  (Compl. [#1], at ¶ 61.)  Chaney further alleges that Diaz failed to respond to complaints of bullying based on J.T.'s race and disability.  (*Id.* at ¶¶ 20–23, 26–28, 57.)  Aside from these allegations, there are no additional facts described in the Complaint regarding Diaz's intentional discriminatory treatment of J.T. and no allegations that might support the assertion that her actions were taken for the purpose of causing adverse effects

on Black and disabled students.  *See Taylor*, 257 F.3d at 473.  There are no factual allegations,

for example, that Diaz responded more vigilantly to reports of bullying by non-Black or non-

disabled students in her classroom.  A violation of equal protection rights can only occur when

governmental action classifies or distinguishes between two or more relevant persons or groups.

*Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988).  Chaney's Complaint lacks sufficient

factual allegations to state a plausible violation of the Equal Protection Clause against Diaz.

Even if Chaney's Complaint could be construed as stating an equal protection claim, Diaz

would still be entitled to qualified immunity.  There is no conduct alleged in the Complaint that

constitutes a clearly established violation of the Equal Protection clause, such that a reasonable

teacher in Diaz's position would have known that her failure to address the bullying in her

classroom violated the Constitution.  *Anderson*, 483 U.S. at 640.  And Chaney does not even

address her equal protection claim in the response to Defendant's motion, let alone identify any

case law that sufficiently defines the contours of the possible equal protection violation.  Because

Chaney fails to allege a clearly established violation of the Equal Protection Clause, the Court

should dismiss this claim against Diaz.

iii.    **Chaney fails to allege the municipal liability of ECISD under the Equal
        Protection Clause but should have the opportunity to replead this claim.**

Defendants' final argument on Chaney's Section 1983 claims is that Chaney's Section

1983 claims against ECISD fail as a matter of law because she has not sufficiently pleaded a

claim for the school district's municipal liability under *Monell v. Department of Social Security*

*of New York*, 436 U.S. 658 (1978).  The undersigned agrees that Chaney's Complaint fails to

allege a plausible equal protection claim against ECISD or satisfy the requirement that this claim

be based on actions for which ECISD itself is responsible.  Yet the Court should allow Chaney

the opportunity to replead this claim.

Chaney alleges throughout her Complaint that ECISD failed to keep J.T. as safe as his non-disabled peers in the classroom and subjected him to segregation and racial discrimination by failing to adequately address student-on-student bullying and harassment.  (Compl. [#1], at ¶¶ 62, 94, 102, 107.)  But beyond conclusory allegations regarding a general pattern and practice of ignoring complaints of bullying and ignoring discrimination, Chaney has not alleged any particular facts suggesting that in doing so ECISD had a history of treating various groups differently.  (*See, e.g.*, *id.* at ¶ 57 (alleging generally that "policymakers of ECISD were aware of the discriminatory and unjustifiably different treatment between black and white students in their school district").)

A municipality or local governmental entity, such as an independent school district like ECISD, may be held liable only for those acts for which it is actually responsible.  *Doe*, 153 F.3d at 215.   Municipal liability cannot be predicated on the doctrine of *respondeat superior*. *Piotrowski*, 237 F.3d at 578.   Therefore, establishing municipal liability under Section 1983 requires proof of three elements: (1) an official policy or custom; (2) a policymaker who can be charged with actual or constructive knowledge of the policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom.  *Fennell*, 804 F.3d at 412 (quoting *Monell*, 436 U.S. at 694).  The Fifth Circuit has defined "official policy" as:

> 1.  A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the district . . . or by an official to whom the district has delegated policy-making authority; or
>
> 2.  A persistent, widespread practice of district officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents district policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the district or to an official to whom that body had delegated policy-making authority.

*Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir. 1995) (internal citation and quotation omitted).

Whether a particular official has "final policy-making authority" is a question of state law. *St. Louis v. Praprotnik*, 485 U.S. 112, 128 (1988). In Texas, it is well-settled that only the board of trustees has final policy-making authority with respect to an independent school district like ECISD. Tex. Educ. Code § 11.151; *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993). Superintendents of schools, school administrators, principals, teachers, and school staff do not have final policy-making authority in a school district. *See Jett*, 7 F.3d at 1245.

Under these precedents, Defendants argue that Chaney has failed to plead an official policy by a final policy-maker because she fails to plead any action by ECISD's board of trustees or the board of trustee's knowledge of the alleged constitutional injury to J.T. As to custom or practice, Defendants argue that Chaney fails to plead any prior or subsequent similar incidents occurring at ECISD necessary to sustain her claims and establish more than isolated events involving J.T. The undersigned agrees with both arguments.

Chaney's Complaint does not contain any allegations regarding an official policy promulgated by ECISD's board of trustees that was the moving force behind the violation. Rather, the only official policies referenced in the Complaint are ECISD's policy on bullying, which requires "[a]ll employees . . . to report student complaints of bullying, including cyberbullying, to the campus administrator or immediate supervisor" (Compl. [#1], at ¶ 45), and ECISD's anti-discrimination policy, which prohibits discrimination on the basis of race, color, gender, disability, national origin, religion, family status, or sexual orientation (*id.* at ¶ 46). Chaney alleges that ECISD failed to adhere to these policies by engaging in a pattern and practice of not addressing bullying and harassment within its schools, i.e., that ECISD had an

unwritten and widespread policy or custom of ignoring reports of harassment and bullying throughout its schools, not that ECISD promulgated an unconstitutional policy.  (*Id.* at ¶¶ 50–51.)

As to policy or custom, Chaney's Complaint lists numerous unwritten policies she believes ECISD has embraced that caused injury to J.T., such as race-based and disability-based discrimination against students, inadequate training for teachers regarding race and disability, and having a de facto policy of ignoring student complaints of bullying.  (*Id.* at ¶ 75.)  Yet, the only additional factual allegations regarding these unwritten policies are that numerous complaints have been lodged by students and parents of students within ECISD and that many of these complaints were written and allege bullying based on race and disabilities.  (*Id.* at ¶¶ 50–51.)  These generalized allegations are insufficient to give rise to anything "more than a sheer possibility that a defendant has acted unlawfully" and, again, do not provide support for the essential requirement of an equal protection claim—that ECISD subjected J.T. to disparate treatment on account of his race or disability.  *Iqbal*, 556 U.S. at 678.

Chaney argues in her response to Defendants' motion to dismiss that at the motion-to-dismiss stage, prior to discovery, a plaintiff will rarely have access to specific details about the policies or practices that led to the constitutional violation alleged in a complaint.  Thus, she argues, the court should require only minimal factual allegations to survive a Rule 12 motion to dismiss in the context of a claim alleging municipal liability, as opposed to the individual liability of an employee.  *See Thomas v. City of Galveston, Tex.*, 800 F. Supp. 2d 826, 842 (S.D. Tex. 2011) (requiring only "minimal factual allegations" in context of municipal liability claim in light of challenge in obtaining "specific details regarding the existence of absence of internal policies or training procedures prior to discovery").  *See also Schaefer v. Whitted*, 121 F. Supp.

3d 701, 718 (W.D. Tex. 2015) (listing examples of types of facts that would constitute such "minimal factual allegations" against municipality to survive Rule 12 motion, such as examples of past incidents of misconduct).

Even if the Court were to embrace this middle ground pleading standard recognized by *Thomas*, Chaney's Section 1983 claims still lack even the minimal degree of specificity required. As the court explained in *Thomas*, these minimal factual allegations still must contain some specific details regarding the existence of a policy or widespread custom or practice beyond mere boilerplate allegations. *See Schaefer*, 121 F. Supp. 3d at 718–19 (finding plaintiff's allegations concerning city's policy of using excessive deadly force inadequate to state a claim for relief because they "are simply a reformulation of the elements of a claim for municipal liability based on an unconstitutional custom or practice devoid of any factual enhancement or support," such as "specific examples of persistent and widespread abuse"). The Court should therefore dismiss Chaney's equal protection claim against ECISD. This dismissal should be, however, without prejudice to repleading by filing a More Definite Statement with sufficient factual allegations to give rise to a plausible claim that ECISD had either an official policy or custom causing J.T.'s constitutional injury or a persistent and widespread policy or custom that was the moving force behind the violation. In repleading, Chaney must include sufficient factual allegations that ECISD subjected J.T. to disparate treatment so as to implicate the Equal Protection Clause.

**G.    Chaney's request for punitive damages should be dismissed.**

Finally, Defendants argue Chaney's request for punitive damages should be dismissed. The undersigned agrees. The only claims that should survive Defendants' motion to dismiss are Chaney's claims under the ADA, Rehabilitation Act, and Title VI against ECISD. Well-settled precedent establishes that punitive damages may not be awarded in private suits under any of

these statutes. *Barnes v. Gorman*, 536 U.S. 181, 187–90 (2002) (addressing ADA, Rehabilitation Act, and Title VI claims). The Court should therefore dismiss Chaney's request for punitive damages.

### III.  Analysis of Motion to Stay

Defendants ask the Court to stay discovery pending a ruling on their motion to dismiss. District courts have broad discretion in all matters of discovery. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006). The undersigned will grant Defendants' motion as to Chaney's claims against Diaz while the report and recommendation to dismiss all claims against her is pending before the District Court. The undersigned will deny the motion as to Chaney's ADA, Title VI, and Rehabilitation Act claims against ECISD. In light of the recommendation that some claims against ECISD survive Defendants' motion, the undersigned will order Chaney and ECISD by separate order to confer on proposed scheduling recommendations as to these claims and will proceed with the entry of a scheduling order in this case.

### IV.  Requirement to File a More Definite Statement

Generally, a plaintiff should be given an opportunity to replead prior to dismissal of a cause of action for failure to state a claim. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). However, courts are not required to permit repleading where repleading would be futile. *Id.* In this case, Plaintiff should be permitted to file a more definite statement to attempt to cure the pleading deficiencies with regard to Chaney's legal capacity to sue on behalf of J.T.'s estate and her equal protection claim against ESCID. If Defendants, upon review of the ordered more definite statement, continue to believe there is a capacity issue in this case or that Chaney has failed to sufficiently allege ECISD's

municipal liability under the Equal Protection Clause, they may file a renewed motion to dismiss addressing these limited issues.  As to the other claims that the undersigned recommends be dismissed, supplemental pleading would be futile and should not be permitted.

## V.  Conclusion, Recommendation, and Orders

Having considered Defendants' motion, the response and reply thereto, the pleadings and governing law, the undersigned recommends that Defendants' 12(b)(1) and 12(b)(6) Motion to Dismiss Plaintiffs' Original Complaint [#13] be **GRANTED IN PART AND DENIED IN PART** as follows:

- Chaney's due process claims against both Defendants pursuant to 42 U.S.C. § 1983 should be dismissed because Chaney fails to allege the required state action to sustain a claim for the violation of substantive due process (Counts I through V);

- Chaney's equal protection claim against Diaz pursuant to Section 1983 should be dismissed because her pleadings fail to overcome Diaz's qualified immunity (Counts I through V);

- Chaney's equal protection claim against ECISD pursuant to Section 1983 should be dismissed without prejudice because she fails to allege a plausible equal protection claim against ECISD based on its municipal liability, but Chaney should have the opportunity to replead this claim (Counts I through V);

- Chaney's claims against Diaz under the ADA, Rehabilitation Act, and Title VI should be dismissed, but these claims against ECISD should proceed (Counts VI through VII);

- Chaney's tort claims for negligence and wrongful death against ECISD and Diaz should be dismissed because Defendants enjoy governmental and/or professional immunity from these claims (Counts IX through XI); and

- Chaney's request for punitive damages should be dismissed.

**IT IS FURTHER ORDERED** that Chaney file a more definite statement regarding her status vis-à-vis J.T.'s estate for purposes of establishing her legal capacity to proceed on its behalf in this lawsuit and her equal protection claim against ECISD within **14 days, on or before May 30, 2022**.

**IT IS FINALLY ORDERED** that Defendants' Opposed Motion to Stay Discovery and Case Pending Ruling on Defendants' 12(b)(1) and 12(b)(6) Motion to Dismiss Plaintiffs' Original Complaint [#18] is **GRANTED IN PART AND DENIED IN PART**.  Discovery is **STAYED** regarding all claims against Diaz until further order of the Court, but discovery may proceed with respect to the surviving claims under Title VI, the ADA, and the Rehabilitation Act against ECISD.

## VI.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal

conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 16th day of May, 2022.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE